UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DIANA GONZALEZ<br>　　　Plaintiff, | CIVIL ACTION NO.: |
| v. | |
| HARTFORD AUTO GROUP, INC. and<br>CAPITAL ONE, N.A. d/b/a CAPITAL ONE<br>AUTO FINANCE<br>　　　Defendants | NOVEMBER 26, 2018 |

**COMPLAINT**

## I.   INTRODUCTION

1.    This is a suit brought by a consumer against an automobile dealership for violations of the Truth in Lending Act ("TILA"), Equal Credit Opportunity Act ("ECOA"), the Connecticut Retail Installment Sales Financing Act ("RISFA"), the Connecticut Unfair Trade Practices Act ("CUTPA"), revocation of acceptance due to fraud and material misrepresentation and for civil forgery. Liability is asserted against the lender as assignee of the retail installment sales contract.

## II.   PARTIES

2.    Plaintiff, Diana Gonzalez ("Plaintiff"), is an individual residing in Hartford, Connecticut.

3.    Defendant Hartford Auto Group, Inc. ("HAG") is a Connecticut corporation that operates a motor vehicle dealership in Hartford, Connecticut.

1

4. Defendant Capital One, N.A. d/b/a Capital One Auto Finance ("Capital One") is a national association with a principal office in McClean, Virginia.

### III. JURISDICTION

5. Jurisdiction in this court is proper pursuant to 15 U.S.C. § 1640(e), 15 U.S.C. 1691e(f) and 28 U.S.C. § 1331. This court has jurisdiction of the pendent claims pursuant to 28 U.S.C. § 1367.

6. This Court has jurisdiction over both Defendants, because they regularly conduct business in the state and HAG because it is located in Connecticut.

7. Venue in this Court is proper, because the Plaintiff resides in Connecticut and the transaction occurred in this state.

### IV. FACTUAL ALLEGATIONS

8. Plaintiff visited HAG on or about April 30, 2018.

9. Plaintiff had received a letter from HAG informing her that she was "qualified" to purchase a car and made an appointment to come to the dealership.

10. Plaintiff is Hispanic and a woman.

11. The practice of car dealerships setting disadvantageous pricing and credit terms for racial minorities, women, and the young and old has been extensively studied and persists within the industry even when dealerships undertake the conduct without explicit animus. *See Race and Gender Discrimination in Bargaining for a New Car;* Ian Ayres and Peter Siegelman, The American Economic Review, Vol. 85, No. 3. (Jun.,

1995), pp. 304-321; *Imperfect Competition in Auto Lending: Subjective Markup, Racial Disparity, and Class Action Litigation*, Mark A. Cohen, The Journal of Law and Economics Vol. 8, No. 1 (2012), pp. 21-58.

12. Research suggests that the dealerships' disparate treatment of women and racial minorities may be caused by dealers' statistical inferences about consumers' reservation prices.

13. HAG engages in sales tactics wherein it targets women, racial minorities, elderly persons and young people for discrimination with respect to the extension of credit and the setting of credit terms.

14. HAG is a "creditor" as that term is defined by the ECOA. See 12 C.F.R. § 1002.2(l); *Tyson v. Sterling Rental, Inc.*, 836 F.3d 571, 578 (6th Cir. 2016).

15. HAG regularly participates in the credit decision through setting the terms of credit by, *inter alia,* setting the price of the vehicle, selecting which vehicle to sell, deciding whether or not to extend credit to customers for certain vehicles, and selecting the price for add-ons associated with the transaction.

16. On information and belief, HAG also sets the interest rate for some or all of the vehicles it sells within limits prescribed by assignees.

17. HAG's business practice is to "size up" customers and, for those perceived as vulnerable and gullible (known or previously known internally at HAG as "ducks", as in the colloquialism "sitting ducks"), to charge them higher prices (relative to

sophisticated buyers), and to "pack" their contracts with extras of little value compared to their cost.

18. HAG determines whether or not a customer is a "duck", in part, on the basis of whether or not a customer is a member of a protected class, such as a woman or a member of a racial or ethnic minority.

19. HAG refers or has referred to buyers who appear sophisticated and informed, including many middle-aged, white men, as "beaters" and it does not attempt to take advantage of them with the above described sales tactics.

20. HAG refers or has referred to Indian-American customers as "dots", presumably in reference to the Bindi worn by some Hindu and Jain women. When Indian-American customers come to HAG, the sales staff pretends to be busy and ignores them because of their perception that they are sophisticated customers and HAG will not be able to take advantage of them.

21. HAG refers or has referred to Asian-American customers as "chinks", in reference to the slur used against Asian-Americans.  HAG's tactic with Asian-American customers is or was to increase the price of the vehicle, but then add digits associated with luck in Chinese numerology in order to entice the customer into the purchase.

22. When HAG determines a customer to be a "duck", one frequently utilized tactic is to show that customer a single vehicle or very narrow group of vehicles on its lot and tell them that this is the only vehicle for which they are "approved", "qualified", or that it is the only vehicle available for them to purchase.

23. HAG uses this tactic, because it allows it to off-load undesirable vehicles to "ducks", usually at prices far above their value.

24. HAG will not permit that customer to apply for credit for other vehicles on the lot.

25. It is the practice of HAG, when dealing with "ducks", to base the asking price for vehicles not upon the Manufacturer's Suggested Retail Price ("MSRP") or advertised price, but upon the maximum amount or nearly maximum amount for which a customer is approved for credit to purchase a vehicle. It often removes all window stickers from the vehicle so that the customer has no idea what the advertised price or MSRP is for the Vehicle.

26. Members of protected classes are considerably more likely to be characterized as "ducks" by HAG than the general public and, consequently, members of the protected classes are sold vehicles that are in damaged or unsafe conditions.

27. Plaintiff was interested in a used vehicle or an economy, new vehicle like a Mitsubishi Mirage.

28. Plaintiff informed the salesman, Rafael Castro, that her sole source of income was social security disability of $750/month. She also stated that she could afford payments of no greater than $350/month and that she wanted to purchase a used vehicle or a Mirage.

29. Castro nevertheless steered Plaintiff towards a much more expensive vehicle, a new Mitsubishi Outlander Sport (the "Vehicle") and falsely told her that it was the only vehicle for which she could be approved by a lender.

30. Plaintiff was not provided with any notice or explanation indicating why HAG would not extend credit to her for the type of vehicle she was interested in purchasing and why she was turned down for credit for that type of vehicle.

31. On information and belief, HAG would not accept her credit application for a less expensive vehicle because it wished to steer Plaintiff to an undesirable vehicle.

32. Castro told Plaintiff that her monthly payments would be $547/month through Capital One.

33. On information and belief, HAG committed credit application fraud.

34. Plaintiff protested that she could not afford that much. In response, Castro told Plaintiff that she could take the Vehicle home as a loaner to see if she liked it and that he would see if Capital One would agree to better terms.

35. Plaintiff reluctantly agreed and was presented with paperwork that she was told was required to take the vehicle as a temporary loaner. She then went home with the Vehicle on dealer plates.

36. Unbeknownst to Plaintiff, Castro had her sign a purchase order for the Vehicle.

37. Castro or another individual at HAG put these documents and a retail installment sales contract (the "Contract") in an envelope in the glovebox.

38. The documents Plaintiff signed were physically signed with pen and ink and she did not sign any documents digitally.

39. Castro or another individual at HAG prepared a separate electronic contract, digitally "executed" the contract as Plaintiff, and assigned the digital contract (the "Forged Contract") to Capital One.

40. The Forged Contract includes a charge for a GAP addendum for $850 and service contract for $2,380, which Plaintiff neither desired nor received.

41. The respective contracts for these services were unsigned.

42. The Forged Contract lists a down payment of $2,500, which Plaintiff never paid.

43. The Forged Contract listed a purchase price for the Vehicle of $25,831, even though the Vehicle had been advertised for $25,430.

44. Shortly thereafter, Plaintiff received a call from HAG telling her the license plates for the Vehicle were ready and that she needed to return to the dealership to have them installed. Plaintiff informed the HAG representative that she wished to return the Vehicle because she could not afford the payments.

45. To Plaintiff's surprise, HAG told her that she could not return the Vehicle, because she had purchased it.

46. As a result of the material misrepresentations regarding the nature of the transaction and the Forged Contract, Plaintiff elected to rescind the transaction and

returned the Vehicle to HAG June 14, 2018, restoring HAG and Capital One as nearly as possible to their pre-contractual position.

47.     Plaintiff, through counsel, provided HAG and Capital One with written notice of her claims on June 15, 2018.

### V.   CAUSES OF ACTION

#### a. COUNT ONE – EQUAL CREDIT OPPORTUNITY ACT

48.     HAG discriminated against Plaintiff as that term is defined by 14 C.F.R. § 1002(n), "treat[ing] an applicant less favorably than other applicants."

49.     HAG discriminated against Plaintiff steering her towards a vehicle that she did not want to purchase.

50.     HAG refused to extend credit to Plaintiff for the purchase of a less expensive vehicle and it failed to provide her with a notice of adverse action as required by ECOA for its denial of credit regarding a used vehicle or a Mitsubishi Mirage.

51.     If Plaintiff could be approved for credit at the monthly amount of $547, doubtless she would be approved for lending a lower monthly amount.

52.     HAG is liable to Plaintiff for statutory punitive damages up to $10,000, attorney's fees, and costs.

53.     Capital One is liable to Plaintiff as assignee of the Contract pursuant to its terms and Conn. Gen. Stat. § 52-572g.

**b.     COUNT TWO: TRUTH IN LENDING ACT**

54.     HAG violated TILA by not providing Plaintiff with the disclosures required by 15 U.S.C. § 1338.

55.     HAG further violated TILA by listing a false down payment on the Forged Contract and not accurately itemizing the amount financed.

56.     Although the Forged Contract reflected a cash price of $25,831.02, the effective cash price of the Vehicle, once the false down payment of $2,500 is subtracted, was $23,331.02.

57.     The increased sales tax of approximately $158.75 that is attributable to the false down payment would not have been charged in a comparable cash transaction, and it should have been disclosed as a finance charge instead of included as part of the amount financed.

58.     HAG is liable to Plaintiff for statutory damages of $2,000 plus attorney's fees and costs.

**c.     COUNT THREE: RETAIL INSTALLMENT SALES FINANCING ACT**

59.     By inaccurately listing the amount paid for a down payment, HAG violated RISFA, Conn. Gen. Stat. § 36a-771(a), which requires that all essential provisions of the contract be included in the retail installment contract.

60.     Plaintiff may also rescind the Contract due to the forgery.

61. Through its violations of TILA, as pled above, HAG further violated RISFA, which incorporates the requirements of TILA by operation of Conn. Gen. Stat. § 36a-771(b).

62. HAG and Capital One have been restored to their pre-contractual position as nearly as possible because the Vehicle was returned to them.

63. Plaintiff is entitled to a rescission of the Contract due to the violations of RISFA.

### d. COUNT FOUR: REVOCATION OF ACCEPTANCE DUE TO FRAUD OR MATERIAL MISREPRESENTATION

64. HAG made material misrepresentations regarding Plaintiff's down payment, forged her signature to the Forged Contract, and misrepresented the nature of delivery of the Vehicle by telling her that she could return the Vehicle and that it was a loaner. This conduct and representations constitute material misrepresentations or fraud within the meaning of Conn. Gen. Stat. § 42a-2-721.

65. Plaintiff validly and effectively revoked acceptance of the Vehicle pursuant to Conn. Gen. Stat. § 42a-2-608.

66. HAG's conduct was willful, tortious in nature, and undertaken with a reckless disregard of Plaintiff's rights, entitling her to claim common law punitive damages.

67. Capital One is liable to Plaintiff as assignee of the Contract pursuant to the terms of the Contract and Conn. Gen. Stat. § 52-572g.

### e. COUNT FIVE: CIVIL FORGERY

68. HAG forged Plaintiff's signature on to the Contract.

69. HAG is liable to Plaintiff for double damages plus common law punitive damages pursuant to Conn. Gen. Stat. § 52-565.

70. Capital One is liable to Plaintiff as assignee of the Contract pursuant to the terms of the Contract and Conn. Gen. Stat. § 52-572g.

### f. COUNT SIX: CONNECTICUT UNFAIR TRADE PRACTICES ACT

71. HAG has engaged in unfair acts and practices in trade or commerce in violation of Conn. Gen. Stat. § 42-110a *et seq.* in connection with the transaction as described above and as follows:

   a. Its violation of ECOA;

   b. Its violation of TILA;

   c. It forged Plaintiff's signature on to the Contract;

   d. It sold the Vehicle for more than the advertised price;

   e. It falsely represented to Plaintiff that the Vehicle was a loaner and that she could return it;

   f. It committed credit application fraud;

   g. It charged Plaintiff for a service contract that was neither desired nor requested; and

      h. It charged Plaintiff for a GAP addendum that she neither desired nor requested.

72. As a result of HAG's conduct, Plaintiff has suffered ascertainable losses of money or property in that she was forced to enter into and was bound to a transaction for a vehicle she did not want, had her credit impacted, was charged more than the advertised price, and charged for items that she neither requested nor desired.

73. For HAG's violations of CUTPA, Plaintiff is entitled to her actual damages plus punitive damages, costs and a reasonable attorney's fee.

74. Plaintiff is also entitled to equitable relief in the form of a cancellation of the Contract.

75. Capital One is subject to these claims as assignee of the Contract pursuant to Conn. Gen. Stat. § 52-572g and the terms of the Contract.

WHEREFORE, the Plaintiff seeks:

Monetary damages; statutory damages of $2,000, an order stating Plaintiff validly revoked acceptance of the Vehicle, or in the alternative, a cancellation of the Contract; attorney's fees and costs pursuant to TILA, CUTPA and ECOA; and such other relief as may apply at law or equity.

PLAINTIFF, DIANA GONZALEZ

By: _____
Daniel S. Blinn
dblinn@consumerlawgroup.com
Brendan L. Mahoney
bmahoney@consumerlawgroup.com
Consumer Law Group, LLC
35 Cold Spring Rd. Suite 512
Rocky Hill, CT  06067
Tel. (860) 571-0408
Fax (860) 571-7457